Argued and submitted March 6, decision of the Court of Appeals is reversed and case remanded to the Court of Appeals for further consideration May 1, 1992
See 115 Or App 319, 838 P2d 620 (1992)

Ginny M. WARREN,
*Petitioner on Review,*

*v.*

FARMERS INSURANCE COMPANY
OF OREGON,
*Respondent on Review.*

(CC 87-0103C; CA A61445; SC S38090)

830 P2d 203

Kathryn H. Clarke, Portland, argued the cause and filed the petitions for petitioner on review. With her on the petition for reconsideration was D. Lawrence Wobbrock, Portland.

Larry A. Brisbee, Hillsboro, argued the cause for respondent on review.

Phil Goldsmith, Portland, filed a brief on behalf of *amicus curiae* Oregon Trial Lawyers Association.

PETERSON, J.

## PETERSON, J.

This is an action against a liability insurer. The result turns on the interpretation of an exclusion in a policy of automobile liability insurance. The trial court concluded that the exclusion applied and, therefore, granted summary judgment to defendant. The Court of Appeals affirmed. *Warren v. Farmers Ins. Co. of Oregon*, 106 Or App 116, 806 P2d 710 (1991). We reverse that decision and remand the case to the Court of Appeals for further consideration.

The facts are not disputed. Cooper owned a Datsun, which she gave to her grandmother. Cooper filled out, dated, and signed the certificate of title and delivered the car and the title to her grandmother, but the grandmother did not register the car with the Oregon Motor Vehicles Division.

Cooper later borrowed the Datsun from her grandmother, because Cooper's own car, a Mustang, was being repaired. While Cooper was driving the Datsun with plaintiff as her passenger, the Datsun collided with another car, and plaintiff was injured. Plaintiff filed an action for personal injuries against Cooper.

Defendant had issued a policy of automobile liability insurance to Cooper that listed Cooper's Mustang as the insured automobile. The policy also listed as "the insured car" any car "while being temporarily used as a substitute for [a described vehicle] because of its withdrawal from use due to breakdown, repair * * *." Cooper tendered the defense to defendant. Defendant denied coverage and did not defend, relying on an exclusion that provided:

> "This coverage does not apply to: * * * Bodily injury or property damage arising out of the ownership, maintenance, or use by any person of a vehicle in which you have transferred full ownership interest but the transfer does not comply with the vehicle transfer of ownership provisions of the state motor vehicle law."

Plaintiff obtained a default judgment against Cooper. Cooper then assigned her rights against defendant under the policy to plaintiff, who brought this action, asserting that defendant's policy covered Cooper while Cooper was driving her grandmother's car.

*Former* ORS 481.405(1),[1] in effect at the time of the accident, provided:

> "The [motor vehicles] division shall design the certificate of title for motor vehicles, trailers and semitrailers issued a certificate of title under this chapter. The certificate shall provide space to fill in information required by the division for a transfer under this section. To transfer title or any interest in a motor vehicle, trailer or semitrailer issued a certificate of title under this chapter, the transferor shall sign the certificate and fill in any information required by the division in the appropriate places on the certificate. The transferee shall, within 30 days after the transfer, present the certificate to the division, accompanied by a fee of $7, whereupon a new registration card shall be issued and delivered to the transferee. A new certificate of title shall also be issued to the transferee and delivered to the first security interest holder in order of priority, if any, otherwise, to the transferee."

Plaintiff contends:

> "Of the four sentences in this statute, the first two are directed to the Division of Motor Vehicles and mandate a certificate of title that is designed for transfer of ownership. The third sentence sets forth what is necessary 'to transfer title or any interest' in a vehicle: the transferor must sign the certificate and fill in the required information. *That is precisely what Cooper did.* The fourth sentence contemplates that a transfer has already occurred: *after the transfer*, the transferee shall present the certificate, pay the fee, and obtain a new registration and a new certificate.

> "In transferring ownership to her grandmother, Cooper complied with the statute. By the terms of the statute, the steps Farmers and the Court of Appeals say are missing are steps that occur *after the transfer*, and are not necessary to create the transfer." (Emphasis in original.)

Defendant responds:

> "In order to effectuate a transfer for all purposes, the parties must comply with the requirements of the motor vehicle code. Former ORS 481.405. In this case, there was no such compliance. The only acts which plaintiff alleges were

---

[1] ORS 481.405 was repealed effective January 1, 1986. Or Laws 1983, ch 338, § 978. All references herein to ORS 481.405(1) are to the statute in effect at the time of the accident. Current title transfer statutes include ORS 803.092 and 803.094.

performed prior to this accident were Cooper's signing and dating the certificate and giving it to her grandmother. The certificate was not sent to the motor vehicle division and the transfer fee was not paid. It is undisputed that the transfer did not comply with the vehicle transfer of ownership provisions of the state motor vehicle law. Former [ORS] 481.405.

"Full compliance with the state motor vehicle law is a specified requirement of the insurance contract between Cooper and Farmers. If a transfer does not comply, then any damages arising out of use of the vehicle by the insured are excluded from coverage."

The Court of Appeals ruled for defendant, stating:

"The decisive question is what the state transfer of ownership provisions require. Assuming, as do the parties, that Cooper's indorsement of the certificate of title was necessary to transfer ownership, the trial court correctly concluded that the policy exclusion applies. Although registration occurs, under the statute, 'after the transfer,' it is a transfer provision in that it makes the transfer valid as against the entire world. *So. Seattle Auto Auction, Inc. v. Ladd*, 230 Or 350, 359, 370 P2d 630 (1962). Until registration is completed, the transfer is valid only between the seller and the buyer and as to third parties, *except* 'such persons, creditors or innocent purchasers who have been misled by the record or by failure to make the proper changes in the record.' *Thiering v. Gage et al.*, 132 Or 92, 104, 284 P 832 (1930). Registration is a continuation of the transfer process and completes the transfer for all purposes. It is part of the transfer of ownership provisions of Oregon motor vehicle law." *Warren v. Farmers Ins. Co. of Oregon, supra*, 106 Or at 119-20 (emphasis in original; footnote omitted).

We disagree with the Court of Appeals. The exclusion states that liability coverage does not apply to bodily injury arising out of the use "by any person of a vehicle in which *you* [Cooper, the named insured] have transferred full ownership interest but the transfer does not comply with the transfer of ownership provisions of the state motor vehicle law." (Emphasis added.) In order to transfer "full ownership interest" from the current owner to a new owner, "the state motor vehicle law," ORS 481.405(1), required the transferor to "sign the certificate [of title] and fill in any information required by the [motor vehicles] division" and to deliver the certificate to the transferee. Cooper did what the statute

required to transfer her "full ownership interest." Indeed, those are the only acts under the transfer statute that the transferor can perform. Normally, the transferor has no control over what the transferee does with the certificate of title thereafter.[2]

There is no other evidence concerning the intention of the parties. We read the exclusion to require the *transferor-insured* to comply with the transfer law, to-wit: "This coverage does not apply to * * * [claims arising from the use of an automobile] in which you have transferred full ownership interest but [*your*] transfer does not comply with the * * * transfer * * * law." Given this plausible meaning of the exclusion, the rule that exclusion clauses should be "strictly construed against the insurer," *I-L Logging Co. v. Mfgrs. & Whlse. Ind. Exc.*, 202 Or 277, 305, 273 P2d 212, 275 P2d 226 (1954), and the meaning that we ascribe to the statute, it is clear that the insurer was not entitled to summary judgment.[3]

That does not end the case, however. This ruling revives other issues raised by defendant that the Court of Appeals did not reach. We therefore remand the case to the Court of Appeals to consider those issues.

---

[2] This case does not involve and we express no opinion concerning whether the transferee would be covered under the transferor's policy. Neither do we say that plaintiff is necessarily correct in her interpretation of ORS 481.405(1) and what it may require in other circumstances; here, we construe only the exclusion in the insurance policy and what it requires.

[3] Defendant also asserts:

"The reason for this exclusion is obvious. It is easy for anyone to state after an accident that they have previously transferred ownership in a vehicle. It is equally easy to sign the certificate, date it sometime prior to the accident and use the certificate as proof that the transfer actually preceded the accident. If such proof is sufficient, a dishonest insured can obtain coverage for multiple vehicles while only paying for one. He could insure vehicle A and leave vehicles B, C, D and E uninsured. In the event of an accident in any of the four uninsured cars, the insured can simply complete the certificate of title, date it prior to the accident and claim that he used the car as a substitute vehicle on the date of the accident. The only method of preventing this type of fraud is to require full compliance with the motor vehicle statutes."

We agree that such a situation could arise. The response is twofold. The insurer can write its exclusion more clearly to require that a new title be issued before coverage would exist. Or, if the insurer can establish conduct such as defendant described above, the usual exclusion for claims arising from the use of other cars owned by the named insured (which is exclusion No. 10 in defendant's policy herein) likely would apply.

The decision of the Court of Appeals is reversed. The case is remanded to the Court of Appeals for further consideration.