Argued and submitted June 5, affirmed; application for sanctions denied November 8, 1989, reconsideration denied February 2, petition for review denied March 6, 1990
(309 Or 441)

# FAR WEST FEDERAL BANK, S.B.,
*Appellant,*

*v.*

# TRANSAMERICA TITLE INSURANCE COMPANY,
*Respondent.*

## (A8609-05312; CA A49474)

781 P2d 1259

Leslie M. Roberts, Portland, argued the cause for appellant. With her on the briefs was Josselson, Potter & Roberts, Portland.

Garry P. McMurry, Portland, argued the cause for respondent. With him on the brief was Leah M. Shearin, Portland.

Before Graber, Presiding Judge, and Riggs and Edmonds, Judges.

GRABER, P. J.

## GRABER, P. J.

This is an action on a title insurance policy. Plaintiff Far West Federal Bank, S.B. (Far West) appeals from the judgment in its favor on the ground that the trial court erred in determining its damages. In a previous case, Safeco Title Insurance Company (Safeco) sought damages from Far West for Far West's breach of the warranties in a deed by which it conveyed property to Safeco's insured. Far West settled that case by stipulating to the entry of judgment against it for the prayer of the complaint and by assigning its claim against defendant Transamerica Title Insurance Company (Transamerica), which had insured its title, to Safeco. In return, Safeco covenanted not to execute on the judgment beyond the extent of Transamerica's liability to Far West. Safeco received the right to control this case, in which it is the real party in interest. The trial court awarded Far West the cost of settling the previous case but refused to award the amount of the stipulated judgment. We hold that the settlement extinguished Far West's liability to Safeco and thereby extinguished Transamerica's liability to Far West. We therefore affirm.

In 1980, Far West provided the permanent financing for the Edgewater Condominiums (Edgewater) in north Portland. Transamerica issued a policy insuring Far West's mortgagee's interest in Edgewater. In 1981, Far West foreclosed the mortgage and purchased the property at the foreclosure sale. Transamerica's title policy remained in effect to insure Far West's title. In December, 1981, Far West sold Edgewater to 431 Multnomah Associates (431), transferring title by a warranty deed. It loaned the money for the sale and received a new mortgage on the property. By that time, Far West had discovered that third parties claimed interests in two of the condominium units under sales agreements executed in 1979 and recorded either immediately before the initiation of the foreclosure or during its pendency. Transamerica refused to insure title in 431 without excepting those interests, but Safeco agreed to do so. As a result of events that the parties dispute, the deed that Far West delivered to 431 also did not except those interests.

In August, 1982, the third parties sued Far West and 431 to quiet title to the units in which they claimed interests.

Transamerica defended Far West, and Safeco defended 431. In 1984, the cases ended favorably to Far West and 431, although Safeco paid about $5,600 for improvements made to one of the units. In 1985, Safeco, as 431's subrogee, sued Far West, alleging that it was liable on its warranty deed for Safeco's costs of defending and settling the third-party cases. After Transamerica refused to defend Far West, Safeco and Far West settled the case.

Although Far West stipulated to entry of judgment against it for the prayer of the complaint, it and Safeco tried to arrange matters so that actual liability for the judgment would rest on Transamerica. The settlement agreement recites:

> "The parties wish to conclude the lawsuit by a stipulated judgment against Far West, preserving and transfering [*sic*] to Safeco all rights Far West may have against Transamerica to require that Transamerica satisfy the judgment stipulated to by the terms of this agreement. The parties intend that Far West's further liability under this judgment be limited to the amount insured by and collectible from Transamerica Title Insurance."

To that end, paragraph 3 of the agreement provides:

> "Except to the extent Transamerica is liable to Far West to pay the judgment in this case, or is liable to indemnify Far West (or Far West's assignee of its rights against Transamerica) for the amount of the judgment, Safeco covenants not to enforce, or to execute upon, the stipulated judgment as against Far West."

Safeco then brought this action in Far West's name to recover the amount of the stipulated judgment. Before trial, the court granted Far West's motion for partial summary judgment and held that Transamerica's refusal to defend Far West was wrongful. After trial, the court held that Transamerica was not liable for any portion of the stipulated judgment and entered judgment in favor of Far West for $400, the amount that it spent on outside counsel in settling the case. The court also awarded attorney fees of $1000. On appeal, Far West seeks to recover the full amount of the stipulated judgment and attorney fees that reflect that full recovery.

Previous cases show that an assignment of a claim against an insurer in return for a covenant not to execute may extinguish the insurer's liability. In *Stubblefield v. St. Paul*

*Fire & Marine,* 267 Or 397, 517 P2d 262 (1973), the plaintiff settled a tort action against the defendant's insured by a stipulated judgment for $50,000 and an agreement not to execute against the insured for more than $5,000 of that judgment. The insured then assigned his claim against the defendant to the plaintiff, who brought the case to recover the balance of the judgment. The Supreme Court noted that the defendant's obligation under its policy was to pay all sums "which the Insured shall be *legally obligated to pay* as damages" (emphasis in original) and held that the covenant not to execute meant that the insured was legally obligated to pay only $5,000. Because the insured had agreed to pay that sum himself, the plaintiff acquired no rights by the assignment that he could enforce against the defendant. 267 Or at 400-01.

Two recent cases illustrate the rule in *Stubblefield.* In *Lancaster v. Royal Ins. Co. of America,* 302 Or 62, 726 P2d 371 (1986), the plaintiff settled a tort case against the insured by taking an assignment of the insured's claim against the defendant, his insurer, and covenanting not to enforce the judgment against the insured "personally." The court held that the plaintiff's rights depended on the language of the assignment and the covenant and that the covenant was ambiguous. It could mean either that the plaintiff had agreed not to execute against the insured at all, or only not to execute against the insured's personal property. Because it was not clear whether the insured was obligated to pay damages to the plaintiff, summary judgment for the defendant was improper. The court emphasized that, under *Stubblefield,* "when an insured is released from liability to the assignee, the insured is not legally obligated to his assignee, and the insurance company in turn is not obligated to its insured." 302 Or at 67.

In *Oregon Mutual Ins. Co. v. Gibson,* 88 Or App 574, 746 P2d 245 (1987), we held that a covenant not to enforce any judgment in favor of the injured party "against any of the assets of the covenantee, except his liability insurance" and to satisfy the judgment as to any parcel of real or personal property "upon request of covenantee" unconditionally insulated the insured from any liability over the amount that the insurer paid on his account. 88 Or App at 578. We therefore held that the insurer had no liability to the insured's assignee.

In this case, Transamerica's policy insures Far West

"as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the amount of insurance stated in Schedule A, * * * sustained or incurred by the insured by reason of" a number of defects, including a defect in the mortgagor's title. Far West cannot sustain "loss or damage" if Safeco has agreed not to execute on the stipulated judgment against any of Far West's assets. That is precisely what Safeco did. Under the cases, a promise to execute *only* to the extent that an insurer is liable terminates the insured's liability. Although the insuring clause in *Stubblefield v. St. Paul Fire & Marine, supra,* refers to sums that the insured is "legally obligated to pay," while Transamerica's policy refers to "loss or damage * * * sustained or incurred," the result is the same. Because Safeco agreed not to execute against it, there was no loss or damage that Far West could sustain.

Far West argues that the covenant "does not release Far West or any of its real property from the judgment. It merely measures Safeco's right to execute against Far West by the extent of Transamerica's liability to indemnify Far West." That strained reading does not account for the parties' expressed intent that Far West's liability be limited to the amount "collectible from" Transamerica.[1] We hold that the settlement agreement insulates Far West from all liability to Safeco except for what Transamerica might actually pay. The effect is to release Far West from all liability whatsoever. After the execution of the settlement agreement, Far West could sustain no loss or damage for which Transamerica had insured it.

The court did not err in determining the amount of Far West's damages. The only damages that Far West suffered as a result of Transamerica's wrongful refusal of the defense was the $400 that the trial court awarded. In the light of the only issue on which Far West prevailed, the court also did not err in awarding attorney fees of only $1,000.[2]

We deny Transamerica's application for sanctions under ORS 20.105(1).

---

[1] We also reject Far West's contention that the recital means only that Transamerica must be solvent for the covenant to apply.

[2] Because of our disposition of the case, we need not reach Far West's remaining assignments of error.

Affirmed; application for sanctions denied.